IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-08-358 |
| | § | CIVIL ACTION NO. H-11-2199 |
| NOE HEREDIA SANCHEZ, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. §2255 is Movant Noe Heredia Sanchez's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 50),[1] the United States' Response to Movant's §2255 Motion (Document No. 52), and Movant's Reply to the United States' Response (Document No. 54). After reviewing Movant's §2255 Motion, the Government's Response, Movant's Reply to the Government's Response, the record of the proceedings before the District Court in the underlying criminal case and on appeal, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Noe Heredia Sanchez's §2255 Motion (Document No. 50) be DENIED.

## I.    Procedural History

Movant Noe Heredia Sanchez ("Sanchez"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§2255. This is Sanchez's first attempt at §2255 relief.

---

[1] Noe Heredia Sanchez's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-11-2199 and at Document No. 50 in Criminal Action No. H-08-358.

On June 4, 2008, Sanchez was charged by Indictment with illegal reentry by a previously deported alien after an aggravated felony conviction in violation of 8 U.S.C. §1326(a) and (b)(2). (Document No. 1). On August 15, 2008, Sanchez pleaded guilty, without a written plea agreement, to the Indictment.   (Document No. 16, Transcript of Rearraignment, Document No. 44).   With respect to what the Government was prepared to prove had the matter proceeded to trial, the Government stated:

> Mr. Stabe: Yes, Your Honor.  The Government would show that the Defendant is a citizen of Mexico; that back on February 20th, 1986, he was convicted in Hidalgo County of driving while intoxicated.  On April 11, 1997, the Defendant was convicted in Brazoria County for the offense of unlawfully carrying a weapon.  On August 30th, 1999, the Defendant was convicted in the 23rd District Court of Brazoria County, Texas, for the offense of delivery of a controlled substance, which was an aggravated felony.  He was sentenced initially to eight years probation.  On October 13th, 2004, his probation was amended to a ten-year probation, and on November 17th, 2005, the probation was revoked and he was sentenced to two years' confinement in the Texas State Prison.
>
> Also, on September 20th, 1999, the Defendant was convicted, also in Brazoria County, of the offense of theft.  On July 29, 2002, the Defendant was convicted in Harris County of the offense of driving while intoxicated.  On February 26, 2004, the Defendant was convicted in Hidalgo County, again, of the offense of driving while intoxicated.
>
> On April 5, 2005, the Defendant was deported from the United States at Brownsville, Texas, to Mexico.  Again, on February 7, 2006, the Defendant was deported from the United States at Laredo, Texas, to Mexico.  The Defendant was found on May 8th, 2008, in the United States at Portland, Texas, which is in the Southern District of Texas.
>
> A records search of the Central Index System and the Defendant's A-file revealed no evidence that the Defendant obtained consent from either the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission to the United States.  The fingerprint analyst examined and compared the fingerprints on the warrant of deportation and the conviction documents to known fingerprints of the Defendant and concluded they were made by the same individual.
>
> The Court: All right.  Mr. Sanchez, tell me in your own words what it is you did to

commit the crime you're pleading "guilty" to this morning.

Defendant Sanchez: I didn't understand your question very well.

The Court: I just want you to tell me in your own words what it is you did to commit the crime you are pleading "guilty" to this morning.

Defendant Sanchez: My son lost his sanity.  He became crazy and my wife called me that she needed me urgently back in the United States.

The Court: So, you came back into the United States without first asking permission from the authorities.  Is that correct?

Defendant Sanchez: Yes, Your Honor.

The Court: And you had been deported from the United States?

Defendant Sanchez: Yes, Your Honor. (Transcript of Rearraignment, Document No. 44, pp. 18-20).

Prior to sentencing, a pre-sentence investigation report ("PSR")  was prepared to which Sanchez filed no written objections. (Document Nos. 20, 21, 22, 24).  Pursuant to the PSR, Sanchez had a base offense level of 8 under U.S.S.G. §2L1.2(a).  Sanchez's base offense level was increased by sixteen levels pursuant to U.S.S.G. §2L1.2(b)(1)(A)(I) because of his previous conviction for delivery of a controlled substance that resulted in a two year imprisonment.   Because Sanchez accepted responsibility for his activities, and did so in a timely manner, his offense level was reduced by three levels under U.S.S.G. §3E1.1(a) and (b).  With an offense level of 21, and a criminal history category of IV, Sanchez had an advisory guideline sentencing range of 57 to 71 months.

Sanchez was sentenced on January 16, 2009.  (Document No.  25, Transcript of Sentencing Hearing, Document No.  40).  Sanchez's counsel argued for a sentence at the low end of the advisory guideline sentencing range based on his family circumstances and in particular, Sanchez's desire to make his life in Mexico and not the United States.

The Court: And have you discussed this presentence report with Mr. Salinas, your attorney?

The Defendant: Yes.

The Court:  Do you feel you understand what's contained in the presentence report?

The Defendant: Yes.

The Court: Do you have any questions you want to ask about it at this time?

The Defendant: No.

The Court: All right.  Now, Mr. Salinas didn't file any objections to the report.  But I want to find out if you have any objections that you would like to make to the presentence report.

The Defendant: No.

The Court: Then I will adopt the presentence report as my own, both the findings of fact and the application of the guidelines to the facts.  I find a total offense level of 21, criminal history category of IV, which gives a guideline provision range of 57 to 71 months.

Mr. Salinas, anything you would like to say before I pronounce?

Mr. Salinas: Yes, Your Honor, just briefly, and then I believe Mr. Sanchez would like to address the Court as well.

The Court: Okay.

Mr. Salinas: Your Honor, as reflected in the PSR, Mr. Sanchez has a common-law wife and four children that all reside in the Valley.  And basically when he was deported, apparently he was placed on probation for a case he had, like, ten years ago and he would up violating probation and got revoked as a result of a drinking problem.  It looks like he's had several DWIs and driving while license suspended.

The PSR does reflect that what he's told me and what he's told probation is that his oldest — excuse me– his oldest son was being civily committed as a result of a mental disease and his wife notified him in Mexico, that she was kind of beside herself and really didn't know what to do.  There were some court proceedings.  And that's his reason for coming back, to basically help the family figure out what was happening with their oldest child.  And as a result of that, he wound up getting

4

arrested under an illegal reentry case.  The child I think is 20 now, but he's basically under a psychiatrist's care and under medication and stuff.

Mr.  Heredia Sanchez knows he needs to make his life in Mexico now.  And the family is coming to the realization that if they want to see dad, they're going to have to make arrangements to go to Mexico or move to Mexico.  The wife and the children are all U.S. citizens.  He was a legal resident alien prior to his deportation but, of course, he lost his status.

I would just ask the Court to take into account the family circumstances and sentence him at the low end of the guidelines so he can get back with his family.  He's willing to work two or three jobs, whatever it takes to help them make ends meet.

The Court: Anything you would like to say?  Well, I was going to ask you first and then I was going to ask him.

Mr.  Stabe: Yes, Your Honor.  We're just going to recommend 60 months, somewhere towards the low end of the guideline range, primarily because there are a few criminal history — or criminal convictions that aren't counted.  But we do recognize the fact that, you know, if there's any to the defendant's credit, you know, he was just arrested on a traffic violation, yet he had not committed another, you know, more serious crime when he was found by ICE.  So, that's our recommendation.

The Court: All right.  Mr.  Sanchez, anything you would like to say before I pronounce sentence?

The Defendant: With all my respect, I would like to apologize to you and to the United States for finding myself again in this place, which I feel responsible for and I ask you to forgive me and I beg you to please consider myself and my children. And I am here because my son is sick and I came here at a moment of despair and I never thought I was going to find myself in this situation I am today, because I didn't realize the serious problem I was getting myself into.  And that is all that I'm asking you for.

The Court: And do you understand that if you come back into the United States and you get caught, that it will be even more severe?  Do you understand that?

The Defendant: Yes, yes.  Yes.  I only ask you to give me a chance to live my life in Mexico and I will return there to make my life.  (Transcript of Sentencing Hearing, Document No.  40, pp.  3-6).

On January 16, 2009, Sanchez was sentenced to a term of imprisonment of 57 months, to be

5

followed by a 3 year term of supervised release.  In addition, he was ordered to pay a special assessment of $100.  (Document No. 25, Transcript of Sentencing Hearing, Document No. 40, p 8-10).   Judgment was entered on January 27, 2009.   (Document No. 28).  With respect to Sanchez's sentence, Judge Harmon stated:

> Noe Heredia Sanchez comes before the Court after pleading guilty to the charge of illegal reentry that followed an aggravated felony conviction and deportation.
>
> On May 8th, 2008, he was found in the Southern District of Texas by an ICE agent while working assigned duties at the ICE Law Enforcement Support Center.  He was in custody at the Portland Police Department, Portland, Texas, following his arrest for a traffic offense.
>
> Since age 24, while in the United States, the defendant has been arrested 14 times and criminally convicted 10 times.  His convictions include driving while intoxicated, five times; unlawfully carrying a weapon; theft; delivery of a controlled substance; and driving while licensed suspended.  Prior terms of incarceration have not deterred the defendant from committing new crimes.
>
> In mitigation, the defendant's criminal history does not include any crimes of violence.  Further, he reentered the United States most recently because of his son's mental illness.  The defendant enrolled at community colleges to learn English and industrial painting.  His children and former common-law wife are U.S. citizens and reside in the United States.  He's been deported twice.
>
>                     \*                   \*
>
> I misspoke.  The defendant has been deported one time before.
>
>                     \*                   \*
>
> Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant, Noe Heredia Sanchez, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 57 months.
>
> This sentence takes into account the 41 days that the defendant spent in administrative custody, ICE custody, and will adequately sanction the defendant's criminal conduct and will serve as a deterrent and takes into account the factors identified in 18, United States Code, Section 3553(a).  (Transcript of Sentencing Hearing, Document No. 40, pp. 7-8).

Sanchez appealed his sentence to the Fifth Circuit Court of Appeals. (Document No. 30, 31). The Fifth Circuit affirmed the 16 level enhancement of Sanchez's base offense level based on his prior conviction of a drug trafficking offense. (Document No. 48). The Fifth Circuit wrote:

> Sanchez pleaded guilty of being found unlawfully in the United States after previously being removed following a conviction of an aggravated felony and without having obtained consent of the Attorney General or the Secretary of the Department of Homeland Security ("the Secretary") to apply for admission, in violation of 8 U.S.C. §1326(a) and (b)(2). The presentence investigation report ("PSR") indicated that in 1998, Sanchez was convicted in Texas state court of delivery of a controlled substance after he attempted to sell cocaine to a police informant. According to the PSR, Sanchez was sentenced to eight years' probation for the offense and later to two years' incarceration after that probation was revoked.
>
> At sentencing, the court asked whether Sanchez had reviewed and understood the PSR. Sanchez said he had. The Court then asked whether he had any questions about the PSR. Sanchez answered no. Next, the Court noted that Sanchez had not filed any objections to the PSR and asked whether he had any objections to state at that time. Sanchez again answered no.
>
> The Court then adopted the PSR as its own, "both the findings of fact and the application of the guidelines to the facts." The Court calculated a total offense level of 21, which included the PSR's recommendation 16-level enhancement under U.S.S.G. §2L1.2(b)(1)(A)(I) for prior conviction of a drug trafficking felony for which the sentence imposed exceeded 13 months. Combined with a criminal history category of IV, the Court calculated a guideline range of 57 to 70 months' incarceration and sentenced Sanchez to 57 months.
>
> Sanchez did not object to the PSR, the guideline calculation, or his sentence in the district court. He argues, for the first time on appeal, that the sixteen level enhancement was erroneously applied because the Court relied only on the PSR for evidence of his prior drug-trafficking conviction.
>
> Because Sanchez did not object, we review for plain error only. *United States v. Hickman*, 331 F.3d 439, 443 (5th Cir. 2003). To establish plain error, he must show "(1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights." *United States v. Ramirez*, 557 F.3d 200, 204-05 (5th Cir. 2009) (Internal quotation marks and citation omitted). If those conditions are met, we exercise our discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings" (internal quotation marks and citation

omitted) *Id.*

Sanchez argues that the district court erred by relying exclusively on the PSR to establish whether his state conviction was a "drug trafficking offense" for purposes of § 2L1.2(b)(1)(A)(i)'s 16-level enhancement.  Under *Shepard v. United States*, 544 U.S. 13, 16 (2005), he contends, the court could rely only on "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."

Sanchez's argument is narrow: He does not dispute the existence of the prior conviction, or that the facts underlying the conviction would support the 16-level enhancement if properly presented to the court, or even that the PSR's description of the conviction was correct.  His only point is that the district court needed to ground its factual findings about the prior conviction in one of the permissible sources of information under *Shephard*.

Sanchez mischaracterizes the basis of the findings.  The record shows that he assented to the facts in the PSR, including those facts about his prior conviction.  "[R]eliance on a defendant's admission of facts that are contained in the PSR is permissible" to support a guideline enhancement.  *Ramirez*, 557 F.3d at 204.  It follows that Sanchez has shown no error that was clear or obvious.  *Id.*  at 204-05.  Alternatively, any purported error did not affect the fairness, integrity, or public reputation of the judicial proceedings.  *Id.*  at 205.  (Document No.  48-1).

## II.  Discussion

Within one year of his conviction being final, Sanchez timely filed a §2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No.  50).  Sanchez raises claims of ineffective assistance of counsel.  According to Sanchez, his counsel was constitutionally ineffective for failing to argue that the sixteen level adjustment resulting from his 1999 state conviction for delivery of a controlled substance was not a drug trafficking offense for purposes of the adjustment and further by failing to argue that the sixteen level adjustment did not apply because he was sentenced to less than a year imprisonment.  He further argues that counsel was constitutionally ineffective for failing to object to his criminal history assessment.  Finally, Sanchez argues that counsel was constitutionally ineffective for failing to argue for a departure based on the collateral consequences

of alienage. The Government argues that Sanchez has not shown that his counsel was deficient nor has he shown he was prejudiced.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

9

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The United States Supreme Court in *Harrington v. Richter*, ___U.S.___, 131 S.Ct. 770, 778 (2011) recently discussed *Strickland* in the context of a habeas proceeding involving a state conviction. While *Harrington* did not involve a federal habeas proceeding involving a federal conviction, the Court's discussion of *Strickland* and ineffective assistance of counsel claims is instructive and equally applies to claims brought in a federal habeas proceeding such as those raised herein.

With respect to ineffective assistance of counsel claims, the Court observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the

'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689).   As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791 (emphasis added). Finally, in considering the prejudice prong of *Strickland*, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 791-792 (Citations omitted). As a result, "'[s]urmounting *Strickland's* high bar is never an easy task.'" (quoting from *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485 (2010)). In part, because:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 131 S.Ct. at 778 (citations omitted).

As to the specific examples of ineffective assistance of counsel which Sanchez cites to in support of his ineffectiveness claim, such as that counsel could have and should have argued that the sixteen level adjustment resulting from his 1999 conviction for Texas Delivery of Controlled Substance should not have applied because it was not a "drug trafficking offense" and also because

11

he served less than a year imprisonment for the conviction, that counsel could have and should have objected to his criminal history assessment points based on the November 2010 amendment to the Sentencing Guidelines, and that counsel could have and should have argued for a sentencing departure based on collateral consequences of alienage, upon this record Sanchez is not entitled to relief on his ineffective assistance of counsel claim and he has not shown that counsel's performance fell below that of *Strickland.*

As to Sanchez's contention that the sixteen level enhancement did not apply to him, under the Sentencing Guidelines, Sanchez's Texas conviction for delivery of a controlled substance was considered a "drug trafficking offense." *See United States v. Marban-Calderon*, 631 F.3d 210, 212-213 (5th Cir.), *cert. denied*. 132 S.Ct.129 (2011)("a [prior] Texas conviction for delivery of a controlled substance—whether by active transfer, by constructive transfer, or by offer to sell—necessarily qualifies as a drug trafficking offense under the Sentencing Guidelines."). Because Sanchez's state drug trafficking conviction clearly fell within the sixteen level enhancement under U.S.S.G. §2L1.2(b)(1)(A)(I), Sanchez has not shown any legal or factual basis upon which counsel could have objected to the PSR.

Similarly, with respect to Sanchez's argument that the enhancement should not have applied because the guidelines required that the deportee serve more than 13 months imprisonment to qualify for the enhancement, Sanchez has not shown any viable legal or factual arguments that counsel could have made. With respect to the Texas drug conviction at issue, the record shows that Sanchez was sentenced to eight years probation on August 12, 1999. His probation was revoked and he was sentenced to two years confinement on November 7, 2005. Sanchez was deported to Mexico on February 7, 2006. Because Sanchez's sentence had been increased due to the revocation of his

probation *prior* to deportation, the sentence imposed in connection with the revocation is considered part of his original sentence. *See United States v. Compian-Torres*, 320 F.3d 514, 516 (5th Cir. 2003) (holding that the term of imprisonment received at defendant's revocation hearing that was held *prior* to his deportation was part of the sentence imposed on his conviction for purposes of the guideline); *United States v. Bustillos-Pena*, 610 F.3d 863, 867 (5th Cir. 2010) ("The purpose of the sixteen level enhancement is to ensure that a defendant who reenters the United States illegally after having committed a serious crime is punished more severely than a defendant who reenters the country without having committed a serious crime.). Upon this record, Sanchez has not shown he was prejudiced by counsel's failure to argue that he did not qualify for the adjustment as he served less than a year imprisonment since there was no legal basis for an objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1984) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Sanchez next argues that counsel was ineffective for failing to object to 2 points being added to his criminal history score. In 2009 when Sanchez was sentenced, U.S.S.G. §4A1.1(e) provided for two points being added to the criminal history score in a situation where the instant offense was committed less than two years following the defendant's release from custody. According to Sanchez, the Sentencing Commission subsequently amended the Sentencing Guidelines to eliminate the "recency" points in U.S.S.G. §4A1.1(e), and he suggests that he should benefit from the change and further suggests that counsel should have objected to the two points. Sanchez acknowledges that

13

Amendment 742 does not apply retroactively but argues that he should benefit from the change because it suggests a recognition by the Sentencing Commission that recency points are not always good predictors of criminal history or past criminal activity.

After Sanchez's sentence was imposed, the Sentencing Commission eliminated recency points under U.S.S.G. §4A1.1(e), but did not make the amendment retroactive.  U.S.S.G. App. C, Amendment 742 (Nov. 2011).  The Sentencing Commission determines whether guideline amendments will apply retroactively, *see* U.S.S.G. §1B1.10, and the Courts are authorized to make any retroactive changes.  *See* 18 U.S.C. §3582(c)(2).  The decision by the Sentencing Commission not to make the change retroactive suggests that the sentences rendered under the earlier version remain reasonable and need not be reconsidered.   "[I]f an amendment is not specifically listed in U.S.S.G. §1B1.10(c), a reduction of sentence under §3582(c)(2) is not consistent with the Sentencing Commission's policy statement."  *United States v.  Drath*, 89 F.3d 216, 218 (5th Cir. 1996).  Even assuming that counsel could have and should have anticipated that the Guidelines might have been amended to eliminate the two recency points added to Sanchez's criminal history score, given that the change had not occurred at the time Sanchez was sentenced and given that the Sentencing Commission did not make Amendment 742 retroactive, Sanchez does not benefit from the change.  Upon this record, Sanchez has not shown that counsel had any legal or factual basis to object to the two recency points added to his criminal history score.  Moreover, Sanchez does not dispute that the PSR correctly calculated his criminal history points or that the two additional points applied.  *See United States v.  Vaughn*, 995 F.2d 367, 368 (5th Cir.  1992) (failure to anticipate changes in the sentencing guidelines does not meet any of the standards for collateral attack).  "Clairvoyance is not a required attribute to effective representation."  *Nelson v.  Estelle*, 642 F.  2d 903, 908 (5th Cir.

14

1981); *See also Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997)(holding that there is no general duty on the part of defense counsel to anticipate changes in the law).

Finally, Sanchez argues that counsel was constitutionally ineffective for failing to move for a downward departure due to the collateral consequences of his conviction. According to Sanchez, as a deportable alien, he was not eligible for more lenient conditions of imprisonment and not eligible to participate in Bureau of Prison programs such as drug treatment, or early release. Here, the record shows that Sanchez's counsel was not deficient for failing to request a downward departure based on his status as a deportable alien. Even assuming that counsel had made such a request it would not have been granted since Sanchez's status as a deportable alien was the only ground for such a request. In *United States v. Garay*, 235 F.3d 230, 233-34 & n. 8 (5th Cir. 2000), the Fifth Circuit Court of Appeals observed that even though the sentencing guidelines provide for a downward departure on the ground that the defendant is a deportable alien, such downward departures are proper only an extraordinary case, which are "highly infrequent." *See United States v. Foote*, 2001 WL 671465m *3-*4 (N.D. Tex. 2001) (rejecting argument by §2255 movant that his counsel should have moved for downward departure.). Here, other than the fact that Sanchez was a deportable alien, he has not shown that this was an extraordinary case which would have warranted a departure under *Garay*, and as a result, he has not shown that he was prejudiced by counsel's failure to move for a downward departure based on his status as a deportable alien. The record shows that counsel argued that Sanchez should be sentenced to the low end of the advisory guideline range because he only returned to the United States in response to a family emergency and had no plans to remain or return to the United States. The record further shows that Judge Harmon found counsel's argument persuasive and that Sanchez was sentenced to 57 months, the low end of the

15

advisory guideline sentencing range.  Because Sanchez has not shown that he would have obtained a sentencing departure based on his status as an alien had counsel moved for a reduction.  Sanchez has not shown that any alleged error prejudiced him within the meaning of *Strickland*.  In conclusion, Sanchez has offered no proof of how counsel's performance was objectively deficient, and no proof that such deficient performance prejudiced him in any way.  *See Strickland*, 466 U.S. at 687. Therefore, no relief is available under §2255 of his ineffective assistance of counsel claims.

### III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Noe Heredia Sanchez's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 50) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. §636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 29th  day of March, 2012.

Frances H. Stacy
United States Magistrate Judge